JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona 85007
Telephone: 602-382-2700

JAZMIN J. ALAGHA
State Bar No. 026302
Asst. Federal Public Defender
Attorney for Defendant
Jazmin_Alagha@fd.org

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | No. 2:22-cr-01661-SPL |
|---|---|
| Plaintiff, | |
| vs. | **SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE** |
| Joshua Russell, | |
| Defendant. | Sentencing set for January 16, 2024 |

Mr. Russell, through undersigned counsel, hereby submits the following memorandum for the court's consideration of his request for a downward variance to a term of probation as an appropriate sentence rather than a term of imprisonment. Mr. Russell submits this sentencing memorandum in support.

Respectfully submitted: March 17, 2024,

JON M. SANDS
Federal Public Defender

 *s/Jazmin J. Alagha*
JAZMIN J. ALAGHA
Asst. Federal Public Defender

1

# SENTENCING MEMORANDUM

## I. PROCEDURAL HISTORY

On December 12, 2022, Mr. Russell was arrested for threatening voicemails left on [Public Official]'s voicemail. Upon his arrest, Mr. Russell's home was searched. No weapons were found in his home. No evidence was found that he had any plans to go forward with the threats. Indeed, he had no such intent. He was a man who had never traveled outside of Ohio and was afraid to travel by plane and was recklessly expressing disagreement with the political climate at that time. His arrest was sobering. With a clear mind and faced with his actions, he expressed regret and shame for his actions. After his arrest, Mr. Russell, through counsel appointed for Rule 5 proceedings, expressed a desire to plead guilty without the benefit of any plea and waive trial through a Rule 20 request. The government rejected his request to plead guilty in Ohio.

The matter was transferred to this District. Staying true to his intent to take responsibility for his irresponsible conduct, Mr. Russell pled guilty on August 31, 2023. While he did not intend to cause harm or threaten, he acknowledges his actions and statements were perceived as a threat and meet the statutory elements. While on release, he performed exemplary. He complied with all terms and

conditions of his release. He maintained contact with his attorney. He maintained employment. He went to court-ordered counseling and substance abuse treatment. The PSR states, "there have been no issues of noncompliance. He submits to drug tests weekly, and is engaged in substance use treatment, and mental health counseling. Russell is consistent and cooperative with treatment." (PSR ¶5).

But it is what he did that was not court-ordered that sets Mr. Russell apart. Just following his arrest, Mr. Russell realized that his actions were reckless and largely driven by his use of illicit substances. (PSR ¶15). He further recognized that he was struggling mentally. *Id.* What is more, he knew the messages were not representative of who he was or of the American values he holds and cherishes. *See* (PSR ¶15)(Mr. Russell "got caught up in the rhetoric [ ] and had no intentions of acting on anything he said. Russell related it was an unhealthy response he was really casting his problems on someone else. [ ] he could not believe what he said."). Rather than waiting for court-ordered treatment to begin, Mr. Russell took matter into his own hands, got sober, and sought help with the Jericho House.[1] He began attending substance abuse classes in January of 2022 continues to attend to this day. He has filled his days with work, treatment, and counseling. Mr. Russell

---

[1] The Jericho House has submitted a letter of support noting his growth and consistent attendance since January 19, 2023. These letters were submitted separately to the court.

changed his life around, not because of this case, but rather out of the realization that he was living a lifestyle that was not serving him.

## II. APPLICABLE LAW

Sentencing in this matter is governed by 18 U.S.C.§3553. After the United States Supreme Court's decision in the case of *United States v. Booker*, 125 S.Ct. 738 (2005), this Court must consider the sentencing guidelines, but is not bound by them. Judge Adelman, of the Eastern District of Wisconsin, analyzed *Booker* in the case of *United States v. Ranum*, 353 F.Supp.2d 984, 2005 WL 161223, holding: The guidelines are not binding, and courts need not justify a sentence outside of them by citing factors that take the case out of the "heartland." Courts are free to disagree, in individual cases and in the exercise of discretion, with the actual range proposed by the guidelines, so long as that the ultimate sentence is reasonable and carefully supported by reasons tied to the §3553 factors. Additionally, 18 U.S.C. §3582, states that when determining whether a prison sentencing is appropriate under §3553(a), a judge can "recogniz[e] that imprisonment is *not* an appropriate means of promoting correction and rehabilitation." *Id*. (emphasis added).

**AVOIDING DISPARITY AND PROMOTING RESPECT FOR THE LAW –**

One of the most treasured American values is maintaining the integrity of the United States political system. When the rhetoric become so divisive, no one

really wins. Notably, individuals struggling with mental health and substance abuse struggling financially are most impressionable. Mr. Russell, like many others in his situation, act out of pain and anger derived from challenges to making life better for their family rather than a desire to harm; consequently, they found themselves acting out of character. In acknowledging the mental health issues without excusing the behavior, Courts throughout the United States have varied downward and structured sentences that will hold the individual accountable without disrupting their mental health progress and rehabilitation:

TERMS OF PROBATION OR DIVERSION:

- *United States v. Hannon,* 8:22-cr-134-KKM-CPT: Mr. David Hannon who threatened Rep. Ilhan Omar, made blatant racist remarks, and dangerous and intolerant statements regarding her religion. Noting the crime was motivated by a "hatred for Muslims", the government sought a prison sentence asserting it was the only way to "promote respect and restore confidence for the law" and The Court disagreed and sentenced Mr. Hannon to three (3) years of probation.

- *United States v. Merryman*, 1:22-cr-00050-JKB-1 Veteran Scott Merryman had a deferred prosecution agreement while he receives mental health treatment despite having been found with loaded magazine and a spotting scope following a search of his backpack.[2]

---

[2] Greene, Julie E. "Kansas man's federal prosecution for threatening Biden postponed while he gets treatment" The Herald-Mail. Dec. 19, 2022. https://www.heraldmailmedia.com/story/news/local/2022/12/19/kansan-who-threatened-president-joe-biden-while-in-hagerstown-area-gets-treatment-scott-merryman/69731328007/ (last accessed March 7, 2024).

- *U.S. v. Kerr*, CR 2:20-00513-PHX-DLR: Defendant sentenced to five years probation and six months of home confinement for various threats sent to an Arizona attorney, the threats included various anti-semitic slurs, and included over dozens of e-mails, and four voicemails. Mr. Kerr was charged with interstate communications involving threats in violation of 18 U.S.C. 875 and cyberstalking, in violation of 18 U.S.C. 2261A(2) and 2261(b).

PRISON SENTENCES AND DOWNWARD VARIANCES

- *United States v. Meister*, 4:19-cr-02738-RM-JR, District of Arizona, Tucson. Jan Peter Meister was sentenced to time served after accepting a plea that permitted an additional two-level reduction from the final sentence guideline range of 10-16 months. Kerr would have served just over six months in the bureau of prisons. The variance was granted, and court imposed a time-served sentence followed by a term of supervised release.

- *United States v. Towery, 5:20-cr-00342-XR*, Western District of Texas: The court varied downward and sentenced William Oliver Towery to 8 months in the Bureau of prisons for making threats to then presidential candidate, Joe Biden. After trial, his applicable guideline range was 15-21 months. Mr. Towery made specific remarks regarding his sniping skills and was a former police officer. Firearms were found in his home.

- *United States v. Daugherty,* 0:22-cr-0226-ECT-DJF-1, U.S. District of Minnesota: Brendon Daugherty, who was sentenced to 12 months and 1 day for leaving two threatening voicemails to a US Senator. Mr. Daugherty had a prior for interstate threats to civilian employees in the past. Reports indicate that Judge Eric Tostrud emphasized that threats directed at elected officials pose a "pernicious threat to our democratic institutions."[3]

- *United States v. Hall,* 21-cr-00605-GHW-1, Southern District of New York. Mr. Hall was sentenced to 20 months after making threats against Rep Eric

---

[3] U.S. Attorney's Office Press Release, District of Minnesota, dated 3/30/2023 at https://www.justice.gov/usao-ndtx/pr/man-sentenced-two-years-hoax-bomb-threats (accessed March 6, 2024)

Swalwell. His guideline range was 27-33 months. His calls were also specific and referred to AR-15. He was also convicted for impersonating Trump family members as a way of defrauding the public through a "fundraiser." He kept the money for himself.

**THE NEED FOR THE SENTENCE IMPOSED –**

The present offense is a serious offense. While the offense is serious, we agree the court in *US v. Hannon*, *supra,* where the court found that a felony probated sentence can be sufficient to promote respect for the law when the under the 18 U.S.C. §3553 factors. Here, the factors do support a downward variance:

A. **History and Characteristics of the Defendant**

Mr. Russell is a caring and devoted father from Bucyrus, Ohio. Despite economic struggles, Mr. Russell has always worked hard to provide for his child. His efforts did not go unnoticed. Mr. Russell's son, Caleb, wrote a letter in support sentencing. Notably, Caleb describes his father as a dedicated father that made sure to make memorable family moments despite low-income. Caleb states, "my father did everything in his power to provide me with a everything I wanted and/or needed growing up. We may not have had all the money in the world, but we never went without." Sadly, Mr. Russell's efforts were not always enough.

In 2022, Mr. Russell slowly spiraled into a deep depression. To mask his symptoms, he began drinking and smoking marijuana and at times used

methamphetamine. He became enwrapped in the politics, fueled by the constant scapegoating on both sides of the aisle, Mr. Russell felt out of control. His depression and drug use worsened. He lashed out and left nasty voicemails. He regrets his actions deeply ad acknowledges it was out of his own insecurity rather than legitimate fears. Mr. Russell's insight did not come easy rather through several months of reflection, counseling, and regaining focus in work and his home life.

During his therapy sessions, he was asked to write a letter entitled, "I bet you didn't know," as part of his therapy session. With permission, Mr. Russell has allowed me to provide the letter to the Court. Exhibit A (Russell Letters) The letter is a very real and raw depiction of some of the struggles that Mr. Russell was battling leading up to the ultimate realization of what was ultimately plaguing him. Mr. Russell notes that this journey has led him to find sobriety, "incredible support and direction and kindness", he further notes that the Jericho House is where he became aware of his "cognitive thinking distortions" and learned to "abandon [his] victim mentality" in order to regain control of his life and future. Additionally, Mr. Russell has written an apology letter to the named victim in this case, through his own desire to express his regret and remorse. Exhibit A (Russell Letters).

The growth he has done through counseling is noticeable. Ms. Brittany Ross, Office Manager of the Jericho House, wrote a letter in support for Mr. Russell. She

notes that through Jericho House, he has extensively participated in their programs, specifically, Mr. Russel has completed Anger Management, currently attends weekly 12-Step meeting, weekly Cognitive Restructuring, weekly Relapse Prevention meeting, and submits to weekly drug tests.

Most notably, however, is Ms. Ross's avowal that she "can confidently state he is no longer the same man who began his journey to become a better version of himself." Indeed, since the arrest, Mr. Russell has focused on work and family. He has been employed full-time with Urban Industries, Inc. His employer has written a letter in support, and describes Mr. Russell as "honest, hardworking, and personable." They are aware of the current conviction and will continue to employ him. Currently, Mr. Russell has an eye towards moving up and working towards a promotion, which given his work ethic is a real possibility, as Mr. Laferty, the Plant Manager, notes that Mr. Russell has "excelled in every opportunity offered to him [ ]" and "has shown himself to be someone to be counted on [ ]".[4]

Despite these great strides, Mr. Russell stands before this Court, for the first time in his life as a convicted felon. He understands he will lose certain precious constitutional rights. He accepts the consequences of his actions still today as he did upon his first arrest when he expressed a desire to plead guilty under Rule 20.

---

[4] Letters in support provided to the court separately.

As the court is aware, "[c]ourts may grant additional consideration to defendants who demonstrate acceptance beyond that necessary to obtain a two or three level reduction under § 3E1.1 because such conduct bears directly on their character and on how severe a sentence is necessary to provide deterrence and punishment." *United States v. Severino*, 454 F.3d 206, 211 (3d Cir. 2006)). Here, Mr. Russell has shown an extraordinary desire to accept responsibility. He has not sought to make excuses or explain away his conduct. To the contrary, he has looked inward, reflected on his actions, and shown remorse and accountability. *See* Exhibit A.

Further, he remains committed to showing respect to the Court through compliance while under supervision. In view of the foregoing, a probated sentence is appropriate.

**B. To Reflect The Seriousness Of The Offense, To Promote Respect For The Law, And To Provide Just Punishment For The Offense;**

A felony conviction will, as noted above, results in the loss of Mr. Russell's constitutional rights, specifically his right to vote. He will also carry the burden of being a convicted felon and carry the stigma that such a conviction entails. A probated sentence will maintain supervision and potential incarceration should he fail to comply. A probated sentence will not interrupt his current progress. He will be able to maintain his current employment. He will be able to continue to pay his

mortgage. And focus on his sobriety and livelihood. A prison sentence, on the other hand, would result in loss of employment and loss of his home. While his family is supportive, they cannot financially make the mortgage payments while he is incarcerated. As a result, Mr. Russell will find himself homeless, unemployed, and with a felony conviction upon his release. The court can rest assured the severity of the offense has been impressed on Mr. Russell. The felony conviction and loss of this significant rights promotes respect for the law. A just sentence of probation is necessary to avoid disruption while still holding him accountable.

C. **To afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant**

As noted above, a probated sentence can be sufficient to afford adequate deterrence. Indeed, the arrest itself made a significant impression upon Mr. Russell causing him to make drastic changes to his life. The Court can remain assured that Mr. Russell is a low-risk to reoffend due to the following factors:

- ✓ *Age*: Mr. Russell is 45 years old man with no prior criminal history, appreciating his stable and calm life.

- ✓ *Sobriety and strong support network:* Mr. Russell currently enjoying stable work and home environment.

- ✓ *Stable work and home*: Mr. Russell is a homeowner and has been living in his home for the last eight (8) years. His family and colleagues at work remain supportive. However, a prolonged term of incarceration will result in loss of his family home.

11

It is clear from his conduct, including compliance on release, that he will not make the same mistake again. Mr. Russell is primarily focused now on living a calm life in his hometown of Bucyrus, Ohio and thriving with his current employment. There is no need for specific deterrence as evidenced by Mr. Russell's extraordinary efforts. Additionally, based on the above cases detailing other defendants charged with the same offense, a probated sentence is in line with similarly situated defendants and meets the guideline considerations for general deterrence.

**D. To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;**

Here, the public and the defendant will be most benefitted by ongoing counseling and substance abuse treatment. Through a probated sentence, Mr. Russell will be a contributing member of society. He will continue to pay taxes while at the same time continuing focusing on his mental health and substance abuse issues, which he enrolled on his own and in conjunction with the court ordered treatment. (PSR ¶ 44). A prison sentence is *not* an appropriate means of promoting correction and rehabilitation in this case and a need for incarceration is not needed to accomplish the goals of the United States Sentencing guidelines.

## I.      CONCLUSION

In view of the foregoing, Mr. Russell respectfully requests this Honorable Court impose a term of probation as a reasonable sentence supported by the §3553 factors and is sufficient but no greater than necessary.

Respectfully submitted: March 17, 2024.

> JON M. SANDS
> Federal Public Defender
>
> *s/Jazmin J. Alagha*
> JAZMIN J. ALAGHA
> Asst. Federal Public Defender

Copy of the foregoing transmitted
by ECF for filing March 17, 2024, to:

CLERK'S OFFICE
United States District Court
Sandra Day O'Connor Courthouse
401 W. Washington
Phoenix, Arizona 85003

SEAN LOKEY
TANYA SENANAYAKE
Assistant U.S. Attorney
United States Attorney's Office
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408

Copy mailed to:

JOSHUA RUSSELL
Defendant

U.S. Probation

*s/J. Alagha / yc*
J. Alagha / yc